McNUTT LAW GROUP LLP
SCOTT H. McNUTT (CSBN 104696)
MICHAEL C. ABEL (CSBN 187743)
SHANE J. MOSES (CSBN 250533)
219 9th Street
San Francisco, California 94103
Telephone: (415) 995-8475
Facsimile: (415) 995-8487

Proposed Attorneys for Debtors

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| In re<br><br>UNI-PIXEL, INC.,<br><br>    Debtor. | Case No. 17-52100 MEH<br><br>Chapter 11 |
| In re<br><br>UNI-PIXEL DISPLAYS, INC.,<br><br>    Debtor. | Case No. 17-52101 MEH<br><br>Chapter 11 |
| ☐ Affects Uni-Pixel, Inc.<br>☐ Affects Uni-Pixel Displays, Inc.<br>☒ Affects Both Debtors | **DECLARATION OF JEFF HAWTHORNE IN SUPPORT OF *EX PARTE* APPLICATION FOR ORDER AUTHORIZING JOINT ADMINISTRATION OF CHAPTER 11 CASES**<br><br>[No Hearing Required] |

I, Jeff Hawthorne, declare as follows:

1. I am the Principal Executive Officer of Uni-Pixel, Inc. ("Uni-Pixel, Inc.") and Uni-Pixel Displays, Inc. ("Uni-Pixel Displays", and together with Uni-Pixel, Inc. the "Debtors" or "Uni-Pixel"). I make this Declaration of my personal knowledge and based on my review of Uni-Pixel's books and records and inquiries of Uni-Pixel's management and employees. I could and would competently testify as follows:[1]

## I. BACKGROUND OF UNI-PIXEL

### A. The Uni-Pixel Business

2. Uni-Pixel is a public company that makes transparent conductive films and flexible electronic films, based on a proprietary manufacturing process, used in touch-based electronic products. The process offers precision micro-electronic circuit patterning and modification of surface characteristics over a large area on an ultra-thin, clear, flexible, plastic substrate. These flexible films may be incorporated into computer, tablet, printer, and smartphone touch sensors, as well as automotive applications. Uni-Pixel sells its screens/films under the brand name "XTouch" as sub-components of a fully assembled touch module.

3. In addition to the flexible electronic films described above, Uni-Pixel developed a hard coat resin that can be applied using film, spray, or inkjet coating methods for applications as protective cover films, a cover lens replacement, or a hard coat for plastics. The hard coat resin provides glass-like performance and optical clarity in a thin, flexible, and shatterproof format. It provides exceptional scratch resistance and durability without compromising optical clarity. The hard coat resin and optical films are sold under the brand name "Diamond Guard."

4. Uni-Pixel is headquartered in Santa Clara, California. Manufacturing is done at the Uni-Pixel facility in Colorado Springs, Colorado. Uni-Pixel has a facility in Texas, but those

---

[1] Because the Joint Administration Application is the first substantive pleading filed in these cases, this Declaration includes a comprehensive summary of the background and circumstances of the Debtors, in addition to the information directly relevant to joint administration.

operations (primarily research and development) were being consolidated into the Colorado Springs facility during the summer of 2017.

**B.      Corporate Structure**

5.      Uni-Pixel, Inc. is the parent company of Uni-Pixel Displays, its wholly-owned operating subsidiary. Uni-Pixel, Inc. is a Delaware corporation. Until September 11, 2017, its common stock was quoted on the NASDAQ Capital Market under the ticker symbol "UNXL." Beginning on September 12, 2017, the common stock is now being quoted on the OTC Markets Group's OTC Pink under the symbol "UNXLQ". Uni-Pixel Displays is a Texas corporation.

6.      Uni-Pixel, Inc., as a publicly traded company, is required to make regular filings with the SEC regarding is finances (*e.g*, 10-Q and 10-K's), as well as make other public disclosures required by various SEC rules and regulations.

7.      As of the Petition Date, Uni-Pixel, Inc. is current on all of its required SEC filings. Additional information may be obtained by reviewing the public filings, which are available on the SEC's "EDGAR" website.

8.      The reports Uni-Pixel files with the SEC have been prepared on a consolidated basis to include information relating to both Uni-Pixel Inc. and Uni-Pixel Displays.

**C.      Intellectual Property and Licenses**

9.      Uni-Pixel has 16 issued patents and 58 patent applications covering key technology. Uni-Pixel also has licenses from Microchip Technology Incorporated ("Microchip") and CIT Technology Ltd. ("CIT") for additional technology under 44 issued patents and 93 patent applications belonging to CIT and Microchip.

10.      Uni-Pixel's agreements with Microchip and CIT relate to the Uni-Pixel's XTouch brand products. Generally, the Debtors entered into two agreements with each of CIT and Microchip's predecessor, Atmel Corporation ("Amtel"):[2] the Atmel Patent License Agreement; the Atmel IP License Agreement; the CIT Patent License Agreement; and the CIT IP License

---

[2] Atmel was acquired by Microchip.

Agreement. Both Patent License Agreements gave Uni-Pixel a non-sublicensable, worldwide, royalty-bearing license for the relevant patents. Both of the IP License Agreements similarly licensed to Uni-Pixel a non-sublicensable, worldwide, royalty-free license for the relevant intellectual property related to the patents. The initial term for all of the agreements is five years, expiring in April 2020. Uni-Pixel has the unilateral right to renew the licenses for a term of 10 years. The minimum annual royalties under both Patent License Agreements have been pre-paid through February 2018. Amtel/Microchip and CIT agreed that they would not enter into other license agreements for their respective patents and intellectual property prior to the second anniversary of the closing date of the agreements, which was on April 16, 2015. The Patent License Agreements were amended, in December 2016 (CIT) and March 2017 (Microchip) to allow Uni-Pixel to sublicense in certain circumstances and to accordingly adjust the amount of royalties due.

**D.    Equipment**

11.    At the same time that Uni-Pixel acquired intellectual property and patents from Amtel, on April 16, 2015, it also acquired from Amtel various equipment and facilities necessary to manufacture the touch sensors. In addition to equipment owned by Uni-Pixel, the Debtors also lease certain equipment from Boston Financial & Equity Corporation and from International Financial Services Corporation. The majority of Uni-Pixel's equipment is located at its manufacturing facility, which is located in Colorado Springs, Colorado. The Santal Clara and Texas facilities have a small amount of miscellaneous laboratory equipment.

**E.    Significant Creditors**

*Bridge Bank*

12.    Uni-Pixel's primary secured debt is on a revolving line of credit (the "Credit Line") from Western Alliance Bank through its Bridge Bank division (the "Bank" or "Bridge Bank"). On October 24, 2016, the Debtors entered into a Loan and Security Agreement (the "Loan Agreement") with Bridge Bank for Credit Line. The Credit Line is for a two-year term ending on October 18, 2018. Uni-Pixel is permitted to borrow up to $2.5 million on a revolving basis based on a percentage of eligible export-related accounts. Total borrowing under the line may not

exceed 90% of eligible export related accounts. Borrowings under the line bear interest at the prime rate plus 1.25%. The Debtors' obligations under the Credit Line appear to be secured by all of the assets of the Debtors, including intellectual property.[3] The Export Import Bank of the United States ("EXIM") provides credit support under the Loan Agreement, essentially guaranteeing the Debtors' obligations to Bridge Bank and permitting EXIM to assume all rights and remedies of the Bank under the Loan Agreement in the event that EXIM pays any guaranty claim to the Bank.

13. On August 22, 2017, Bridge Bank notified Uni-Pixel that it was in default under the Credit Line, and the Bank was, among other things: (i) invoking the default rate (Prime plus 6.25%); (ii) declaring all obligations immediately due and payable; (iii) cutting off further advances under the Credit Line; (iv) setting off and applying to Debtors' obligations all balances and deposits held by the bank; and (v) canceling all corporate credit cards.

14. The Debtors' outstanding obligations under the Credit Line as of September 12, 2017, are approximately $638,425, based on a letter from Bridge Bank's counsel.[4]

*Securities and Exchange Commission and Former Executives*

15. In November 2013, Uni-Pixel cooperated with the SEC regarding a non-public fact-finding inquiry that resulted in the SEC filing a complaint in March 2016 against Uni-Pixel and two former executives, Reed Killion (CEO) and Jeffrey Tomz (CFO). Without admitting or denying the allegations in the complaint, Uni-Pixel, Inc. consented on the same day that the complaint was filed to entry of a final judgment that provided for, among other things, a civil penalty in the amount of $750,000 (of which $505,000 remains outstanding as of the Petition Date).

---

[3] The Debtors have not conducted a complete analysis of Bridge Bank's security interests, and therefore reserve all rights to dispute the validity or extent of liens securing the Credit Line.

[4] This is the amount that would be due after application of the funds in Uni-Pixel's bank account at Bridge Bank. At this point it is unclear whether these funds were actually swept and applied to the debt pre-petition.

16. The SEC's action against the two former executives, however, has proceeded to be litigated and remains pending. Uni-Pixel, Inc.'s Amended and Restated Bylaws contain provisions regarding indemnification and advancement of expenses actually and reasonably incurred by these two former officers in connection with civil, criminal, administrative, or investigative matters, provided that such officers acted in good faith and in a manner such officers reasonably believed to be in or not opposed to the best interests of Uni-Pixel, Inc., and, with respect to any criminal action or proceeding, had no reason or cause to believe such conduct was unlawful. The advancement of expenses is expressly conditioned upon receipt of an undertaking by the officer to repay all such amounts so advanced in the event that it shall ultimately be determined that the officer is not entitled to be indemnified by Uni-Pixel, Inc.

17. Uni-Pixel, Inc., or its insurance company, has advanced as agreed all invoices for all years through the end of 2015 for the defense of the two former officers in the SEC's investigation that resulted in the SEC filing the complaint against them. A portion of advancements for 2016 invoices have also been made, but Uni-Pixel, Inc. disputed other 2016 invoices as containing expenses that were not reasonably incurred by the two former officers in defense of the SEC's complaint. The total amount incurred in 2016 and initially disputed by Uni-Pixel, Inc. was $147,750. Through the course of 2016, Uni-Pixel, Inc. was in discussions with counsel to the two former officers regarding resolving counsels' charges on these invoices. Notwithstanding those discussions, on August 22, 2016, the two former officers filed an action in the Delaware Chancery Court against Uni-Pixel, Inc. for advancement of expenses. Uni-Pixel, Inc. contested the claims made by the two former officers that it had not advanced expenses reasonably incurred by them in the underlying action brought by the SEC.

18. In October 2016, the Delaware Chancery Court appointed a former Vice Chancellor of the Chancery Court to act as a Special Master to determine whether expenses were reasonably incurred, to the extent that Uni-Pixel, Inc. and the two former officers were not capable of resolving the dispute without the assistance of the judicial process. In November 2016, unresolved and disputed invoices totaling approximately $129,698 in fees incurred in 2016 prior to November 2016 were submitted to the Special Master for a determination whether such

expenses were reasonably incurred. In May 2017, the Special Master determined that it was reasonable for Uni-Pixel, Inc. to advance $95,749 of the disputed fees from 2016. Prior to the Petition Date, Uni-Pixel, Inc. had not advanced this amount determined by the Special Master to be reasonable, or certain other expenses incurred in 2017 that Uni-Pixel, Inc. had not disputed, as well as other amounts which Uni-Pixel, Inc. had disputed.

19. In addition, on August 28, 2017, the Delaware Chancery Court entered an order requiring Uni-Pixel to advance defense costs to the former executives for their ongoing litigation with the SEC, in the amount of $1,404,598.70, which constitutes the amount for 2016 determined by the Special Master to be reasonable, plus all amounts incurred in 2017 prior to the Petition Date that Uni-Pixel, Inc. had not disputed as unreasonable.[5]

20. Uni-Pixel believes that its D&O insurance carrier, XL Specialty Insurance Company, improperly limited coverage for the SEC investigation and enforcement action against the former officers. Uni-Pixel is pursuing these claims in ligation against the insurer, which is currently pending in Texas state court.

21. The former officers' aggressive actions to collect from Uni-Pixel, including the threat of a receiver liquidating the company's assets to pay their legal fees in defending the SEC enforcement action, were a substantial factor in forcing Uni-Pixel to file for bankruptcy.

## II. EVENTS PRECIPITATING BANKRUPTCY

22. In August 2017, Uni-Pixel was forced to consider a bankruptcy filing as a result of two related circumstances. The first was the aggressive actions by the former officers to force liquidation of assets to pay the advancement of their defense costs in the SEC action, and in particular anticipation of an imminent award against Uni-Pixel, Inc. by the Delaware Chancery Court and the likely appointment by that court of a limited receiver due to Uni-Pixel, Inc.'s failure to advance fees in accordance with the process established by that court in October 2016 when it

---

[5] Uni-Pixel retains its right to seek recovery of advanced defense costs from Killion and Tomz if they are ultimately held liable in the SEC enforcement action.

appointed the Special Master. The second was Bridge Bank declaring a default and accelerating the Credit Line on August 22, 2017. Uni-Pixel believes that Bridge Bank's actions were largely precipitated by the threatened Chancery Court action to appoint a limited receiver. Regardless, they deprived Uni-Pixel of the funds necessary to pay even basic expenses and employees, and left no viable options to continue operating.

23. On August 24, 2017, the Uni-Pixel, Inc. and Uni-Pixel Displays boards of directors authorized the Debtors to file for bankruptcy. The Debtors' boards also authorized the termination of all employees as of August 25, 2017, and all employees were terminated accordingly.

24. As anticipated, the Delaware Chancery Court entered a partial judgment against Uni-Pixel on August 28, 2017, but upon being advised of the authorization to file for bankruptcy, did not concurrently appoint a limited receiver. The Debtors filed their Chapter 11 petitions two days later, on August 30, 2017.

### III. CURRENT STATUS

**A.     Employees and Operations**

25. I am Uni-Pixel's Sole Director and the Principal Executive Officer, and continue to function in that capacity. Christine Russell remains as the Principal Financial Officer and Principal Accounting Officer of the Debtors. The Debtors have no employees at this time. A handful of former employees have continued to assist the Debtors, on an independent contractor basis, with shutting down operations, storing all materials requiring special handling, and beginning the process of reaching out to potential purchasers (described more fully below).

26. Prior to the filing of the bankruptcy cases, all employees were terminated, including all officers of the company, although the Debtors' Principal Executive Officer and their Principal Financial Officer and Principal Accounting Officer agreed to serve in those roles on a consulting basis. Jalil Shaikh, the company's former Chief Operating Officer, has also agreed to assist in the sale process on a consulting basis. The Debtors have taken steps to shut down the manufacturing facility and secure all equipment and materials used in the manufacturing processes, including safe storage of any chemicals. The Debtors believe that they are in the

8   DECL. OF J. HAWTHORNE ISO
APPLICATION FOR JOINT ADMINISTRATION
{00065989-1}   Case: 17-52100   Doc# 26   Filed: 09/20/17   Entered: 09/20/17 07:54:48   Page 8 of 11

process of accomplishing a safe and secure shut down. The Debtors are in communication with the landlord in Colorado Springs in order to address any concerns and discuss next steps.

**B.    Cash Situation**

27.    The Debtors had approximately $139,000 in Bridge Bank and approximately $50,000 in Silicon Valley Bank.[6] Bridge Bank asserts a cash collateral interest in all cash, and has filed a statement declining consent for use of cash collateral. The Debtors are in discussions with Bridge Bank regarding the use of cash collateral, but the Debtors acknowledge that any cash is likely cash collateral, which the Debtors may not use without Bridge Bank's consent or an order from this Court. Silicon Valley Bank has cut off access to the bank account in security for approximately $44,000 for the prior month's company credit card that is owed to the bank.

**C.    Current Inventory**

28.    Uni-Pixel has some completed inventory on hand. Although this inventory may have some value, Uni-Pixel has no money or employees to ship the inventory to purchasers. It is possible that finished inventory could be included as part of an asset sale.

### IV.  SALE EFFORTS

29.    Uni-Pixel believes a prompt sale of its assets is in the best interests of its creditors. Because Bridge Bank's enforcement of its remedies left Uni-Pixel without any cash to operate, and forced an immediate lay-off of all employees, a reorganization is simply not feasible. Without cash for even minimal operations, and given the ongoing accrual of administrative rent obligations for the manufacturing facility, the Debtors are under substantial time pressure to reach agreement on terms for a sale, liquidate assets through an auction, or convert to Chapter 7.

30.    Uni-Pixel has been aggressively pursuing a sale of all of the Debtors' assets. The assets can be grouped into the manufacturing equipment and non-licensed IP for the XTouch

---

[6] Bridge Bank purports to have swept Uni-Pixel's account at Bridge Bank and applied the funds to Uni-Pixel's debt, but to date Uni-Pixel has not received any documentation that the funds were actually swept and applied pre-petition.

sensors (the "XTouch Assets") and the patents, intellectual property and equipment related to the manufacture of Diamond Guard products ("Diamond Guard Assets"). Practically speaking, including the licensed intellectual property related to XTouch in a sale would likely require the buyer to negotiate the consent of the licensors (Microchip and CIT).

31. On the Petition Date, Debtors' management sent solicitation packages to all parties that might be interested in acquiring the Debtors' assets. The pool of prospective purchasers is limited to a small number of identifiable companies, because only parties that are extremely familiar with the Debtors' business and assets would be able to make an offer on the expedited basis necessary. The Debtors received a number of responses to the solicitation materials and management has held numerous discussions with potential purchasers.

32. The Debtors believe that they have reached an agreement with a buyer on the essential terms for a sale of their principal assets, subject to negotiation and documentation of final terms. As a result, the Debtors anticipate filing a motion to approve sale of substantially of the Debtors' assets within a few weeks.

33. If the Debtors are not able to reach final agreement on the terms of a sale, the Debtors will be forced to either conduct an auction sale and sell assets piecemeal or convert the cases to Chapter 7.

## V. JOINT MANAGEMENT AND ADMINISTRATION OF THE COMPANIES

34. Uni-Pixel, Inc. holds 100% of the shares of Uni-Pixel Displays. Uni-Pixel Displays was formed as an operating subsidiary, and the companies have always operated as parts of one unified business. The two companies share unified management. The business of the two companies is intrinsically linked and it would be extremely difficult to try to separate the operations of each of the corporate entities.

35. Although the Debtors maintain accurate bookkeeping information that would allow preparation of separate financial statements for each entity, Uni-Pixel ordinarily does not do so. Uni-Pixel's internal financial systems and reporting are ordinarily handled on a consolidated basis.

In addition, external reporting, including SEC filings and reports to creditors, is always prepared on a consolidated basis.

36. Practically speaking, any resolution of the cases will necessarily entail cooperation and coordination between both of the companies. Any transaction during the bankruptcy cases would likely include a sale of substantially all of the assets of both Debtors.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed September 19, 2017, at Santa Clara, California.

                                                   /s/ *Jeff Hawthorne*
                                                  Jeff Hawthorne