McNUTT LAW GROUP LLP
SCOTT H. McNUTT (CSBN 104696)
MICHAEL C. ABEL (CSBN 187743)
SHANE J. MOSES (CSBN 250533)
219 9th Street
San Francisco, California 94103
Telephone: (415) 995-8475
Facsimile: (415) 995-8487

Proposed Attorneys for Debtors

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

In re

UNI-PIXEL, INC.,
UNI-PIXEL DISPLAYS, INC.,

    Debtors.

Case No. 17-52100 MEH
(Jointly Administered with
Case No. 17-52101)

Chapter 11

**DEBTORS' STATUS CONFERENCE STATEMENT FOR OCTOBER 12, 2017**

Judge: Hon. M. Elaine Hammond
Date: October 12, 2017
Time: 10:30 a.m.
Judge: Hon. M. Elaine Hammond
Place: Courtroom 3020
      United States Bankruptcy Court
      280 South First Street
      San Jose, CA 95113

Uni-Pixel, Inc. ("Uni-Pixel, Inc.") and Uni-Pixel Displays, Inc. ("Uni-Pixel Displays," and together with Uni-Pixel, Inc. the "Debtors" or "Uni-Pixel"), the Debtors and debtors-in-possession in the above captioned Chapter 11 reorganization cases, file this Status Conference Statement to provide an overview and current status of these cases and plans going forward.

### Background and Events Precipitating Bankruptcy and Sale[1]

The Debtors were faced with the imposition of a state court receiver and had no available cash. As a result, the Debtors were forced to terminate all employees. Without cash or employees, the Debtors' operations were shut down and the Debtors filed voluntary petitions for relief under Chapter 11 on August 30, 2017.

### Proposed Sale of Debtors' Assets

Since the commencement of these cases, the Debtors believed – and continue to believe – that a prompt sale of assets is in the best interests of all parties. The Debtors' equipment and assets would be most valuable to a party interested in acquiring the assets in order to manufacture the products that the Debtors manufactured pre-petition. The Debtors believe that the best way to maximize value for creditors is to pursue and orderly sale of substantially all of the Debtors' assets.

The unique nature of the Debtors' product lines requires a significant degree of experience to manufacture saleable products. Expertise in semiconductor manufacturing, chemical processes, and materials sciences are required to conduct the Debtors' business. Only parties that were already very familiar with the Debtors' products and technologies would be able to bid for the Debtors' assets. The Debtors' management contacted such parties within days of the Petition Date to solicit bids.

---

[1] The discussion of the background and events precipitating bankruptcy included in this status conference statement is intended as a general overview. For a more fulsome discussion of these issues, see the previously filed DECLARATION OF JEFF HAWTHORNE IN SUPPORT OF EX PARTE APPLICATION FOR ORDER AUTHORIZING JOINT ADMINISTRATION OF CHAPTER 11 CASES [Docket No. 26], which sets forth these matters in much greater detail.

There were several obstacles to be overcome in any sale of the Debtors' assets: (i) no cash and no employees meant that any sale needed to be negotiated and signed within weeks and without a customary due diligence period; (ii) a high degree of technology transfer risk in light of the loss of employees and their know-how about the complex technologies used by the Debtors; and (iii) licenses critical to the product lines were not owned by the Debtors.

Some of the former members of Debtors' management (principally Jeff Hawthorne, Christine Russell, and Jalil Shaikh), who have not been paid for more than two months, have continued to devote substantially all of their time to attempting to preserve the value of the Debtors' assets and negotiate a sale. As a direct result of their efforts, the Debtors have signed an Asset Purchase Agreement with Future Tech Capital, LLC ("Future Tech"). On October 2, 2017, the Debtors filed motions for approval of bid procedures ("Bid Procedures Motion") and for approval of the sale (the "Sale Motion"), subject to overbids and an auction, pursuant to the terms of the APA with Future Tech.

The Debtors also intend to file a motion for an incentive bonus program to provide some compensation for the key members of the Debtors' management whose efforts resulted in the APA and Sale Motion currently on file with the Court.

The Debtors hope that the proceeds from the sale of assets will be enough to pay the claim[2] of the Debtors' principal secured creditor (Western Alliance Bank, through its Bridge Bank Division ("Bridge Bank")), the costs of sale, and all or a significant portion of the priority claims of employees (primarily for unpaid wages related to the final pre-petition payroll and accrued vacation). The Debtors need to move as quickly as possible to close a sale, but are also preserving the opportunity for competitive bidding at an auction. The Debtors' management will continue to work with and respond to parties that are interested in submitting a competing bid and participating in an auction. A number of parties have expressed interest in submitting a bid and

---

[2] Bridge Bank asserts a blanket lien against all of the Debtors' personal property. The Debtors have not yet audited the Bridge Bank's claim or the validity, extent, and priority of the asserted lien.

participating in an auction, but there is no guarantee that any of those parties will actually submit a competing bid.  If the sale does not close, the Debtors will likely try and arrange for an orderly liquidation with a nationally recognized auctioneer.  The Debtors are under intense time pressure to close the sale as administrative rent accrues at the rate of approximately $100,000 per month.

The Debtors have been working cooperatively with Bridge Bank, and Bridge Bank supports the proposed sale.  The Debtors hope to reach an agreement with Bridge Bank regarding the use of cash collateral to pay the necessary expenses of preserving the assets through the time that the sale closes.  The Debtors are also working with Bridge Bank regarding pursuing insurance claims for certain foreign accounts receivable.

The Debtors have also been working with Microchip Technology Inc. ("Microchip"), the Debtors' landlord of the Colorado Springs facility where the equipment is located.  Microchip supports the proposed sale.  A separate agreement regarding Microchip's administrative claim will be filed, and the intention is that it will be heard and approved on the same day as the hearing on the Sale Motion.

Miscellaneous

The Debtors have filed their schedules, statement of financial affairs, and list of equity security holders.  The Debtors expect minor amendments will be needed to the schedules, but are trying to address all issues in a single set of amended schedules (as opposed to doing so piecemeal or more than once).

The Debtors attended the Initial Debtor Interviews with the analyst from the United States Trustee's Office ("UST").

The Section 341(a) meetings of creditors took place and were concluded on October 3, 2017.

The UST appointed an official committee of unsecured creditors in the Uni-Pixel, Inc. case.  The Debtors understand that the creditors committee is in the process of interviewing and selecting counsel.

As described in the Application for Joint Administration, the Debtors have always held themselves out and conducted business as a unitary business.  All financial statements were

prepared and submitted as consolidated financial statements.  The cases are being jointly administered.  We are still analyzing the relevant issues and evaluating options, but it may be necessary to seek substantive consolidation of these cases either by a separately noticed motion or as part of a plan of reorganization.

<u>Plans Going Forward</u>

If the Debtors are successful in closing a transaction for the sale of their assets, the Debtors will then make a decision about the best path forward.

<u>Other Assets and Sources of Recovery</u>

The Debtors have some accounts receivable that they hope to collect directly from the account debtors.  Alternatively, the Debtors have limited insurance for some foreign accounts receivable that may be a source for recovery.  The Debtors are working with Bridge Bank on these issues.

The Debtors have not conducted any analysis of avoidance actions.  There were significant payments to creditors within 90 days of the petition date, but the Debtors do not know the extent to which those payments might be subject to defenses (*e.g.*, ordinary course of business).

The Debtors are plaintiffs in litigation with their former D&O insurer regarding a coverage dispute, currently pending in Texas.  It is highly uncertain whether a recovery in the litigation is likely.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

Conclusion

The Debtors have done the best they can without employees or funds, and believe that there is a narrow path to a positive outcome that will hopefully get former employees paid for their last paycheck. However, possible recoveries beyond that are uncertain at this point.

The Debtors will have a better idea about plans going forward after the anticipated sale closing. The Debtors propose that the Court schedule a continued status conference for early December.

DATED: October 5, 2017    McNUTT LAW GROUP LLP

By:    /s/ *Michael C. Abel*
Michael C. Abel
Proposed Attorneys for Debtors

{00066428-1}    5    DEBTORS' STATUS CONFERENCE STATEMENT